IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARRYL LIONEL JONES,
      Petitioner,

vs.                                 Case No.:  3:13cv630/LAC/EMT

MICHAEL CREWS,
      Respondent.
_____/

## <u>REPORT AND RECOMMENDATION</u>

This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (docs. 1, 2).  Respondent filed an answer and relevant portions of the state court record (doc. 17).  Petitioner filed a reply (doc. 20).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 17).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2009-CF-221, with two counts of sexual battery while in a position of familial or

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 17).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

custodial authority (Ex. A at 1).  He was charged in Case No. 2009-CF-255 with one count of burglary of an unoccupied dwelling (Count 1) and one count of grand theft ($300 or more but less than $5,000) (Count 2) (*id.* at 3).  On September 2, 2009, Petitioner entered a no contest plea to the charges and was sentenced to a term of twenty-two (22) years of imprisonment on each of the sexual battery charges, a term of fifteen (15) years of imprisonment on the burglary charge, and a term of five (5) years of imprisonment on the grand theft charge, with all terms to run concurrently (*see* Ex. A at 15–24, Ex. J).  Petitioner did not appeal the judgment.

On December 1, 2009, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. A at 27–41).  He subsequently voluntarily dismissed the motion (*see id.* at 42).

On May 25, 2010, Petitioner filed another Rule 3.850 motion (Ex. A at 43–47).  In an order rendered June 28, 2010, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion (*id.* at 58–60).  Petitioner filed an amended motion on July 31, 2010 (*id.* at 61–66).  The court set the motion for an evidentiary hearing but denied Petitioner's motion for appointment of counsel (*id.* at 73–74, 76–79).  Following an evidentiary hearing, the court denied the Rule 3.850 motion (*id.* at 80–105).  Petitioner appealed the decision to the Florida First District Court of Appeal ("First DCA"), Case No. 1D11-1337 (Ex. B at 134–38).  The First DCA reversed the decision, on the ground that the lower court erred by not appointing counsel to represent Petitioner at the evidentiary hearing (*id.*).  *See* Jones v. State, 69 So. 3d 350 (Fla. 1st DCA 2011).  The appellate court remanded the case to the lower court for a new evidentiary hearing after counsel was appointed.  *Id.*  Upon remand, the circuit court appointed counsel for Petitioner and held another evidentiary hearing (*see id.* at 139–40, 146–75).  The court subsequently denied Petitioner's Rule 3.850 motion (*id.* at 176–78).  Petitioner appealed the decision to the First DCA, Case No. 1D12-1254 (Ex. C).  The First DCA affirmed the decision per curiam without written opinion on August 10, 2012, with the mandate issuing September 5, 2012 (Ex. E). Jones v. State, 95 So. 3d 218 (Fla. 1st DCA 2012) (Table).

On October 16, 2012, Petitioner filed a habeas petition in the state circuit court, asserting seven claims of ineffective assistance of counsel (Ex. F).  The circuit court dismissed the pleading as improperly brought in a habeas petition, and untimely and successive under Rule 3.850 (*id.* at

37–38).  Petitioner appealed the decision to the First DCA, Case No. 1D12-5545 (Ex. G).  The First

DCA affirmed the decision per curiam without written opinion on March 21, 2013, with the mandate

issuing April 16, 2013 (Ex. I).  Jones v. State, 109 So. 3d 786 (Fla. 1st DCA 2013) (Table).

      Petitioner filed the instant federal habeas action on December 12, 2013 (doc. 1).

II.     STANDARD OF REVIEW

      Section 2254(a) of Title 28 provides that "a district court shall entertain an application for

a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court"

upon a showing that his custody is in violation of the Constitution or laws of the United States.  As

the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.

In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as determined
>> by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the State court
>> proceeding.

28 U.S.C.A. § 2254 (2002).

      The United States Supreme Court explained the framework for § 2254 review in Williams

v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was

described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the
Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529
U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas,
and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was
joined by Justices Souter, Ginsburg, and Breyer.

claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court

must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291–92.  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011); *see also* Gill, *supra,* at 1292 (the federal

district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see, e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L.

Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
       (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . .

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

.,'" which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly

unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

*Id.*  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence.  *See* McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]."  513 U.S. at 332; *see also* House, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

IV.  PETITIONER'S CLAIMS

A.  Ground One:  "Ineffective assistance of counsel for failing to object to there being two counts of sexual battery when the evidence showed it should only be one.  Violation of 5th, 6th and 14th Amendments of the Constitution.  Strickland v. Washington, 466 U.S. 668 (1984)."

Petitioner alleges defense counsel was ineffective for failing to allow him to view a DNA report from the Florida Department of Law Enforcement ("FDLE") (doc. 1-1 at 2–3; doc. 2 at 2).[7] Petitioner alleges the FDLE report showed that the DNA profile collected from a cervical swab of the victim matched Petitioner's DNA profile.  Petitioner alleges the result of the FDLE report was referenced in the police report, and the arresting officer concluded Petitioner should be charged with one count of sexual battery.  Petitioner alleges he informed defense counsel that he was concerned that he was charged with two counts even though "there was only one episode of sexual battery of which there was evidence taken."  He alleges counsel's failure to allow him to see the FDLE report deprived him of the ability to make an informed decision as to whether to enter a plea to two sexual battery charges.  He alleges if counsel had allowed him to see the FDLE report, there "would have been [a] different result at sentencing," because sentencing him for two charges "may not have been legally correct" (doc. 1-1 at 3).

Petitioner alleges he attempted to present this claim in the Rule 3.850 proceeding by informing his post-conviction counsel of it, but the post-conviction court would not permit counsel to pursue the claim at the evidentiary hearing, because Petitioner failed to include the claim in his

_____

[7] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

pro se Rule 3.850 motion (*see* doc. 1-1 at 2).  Petitioner asserts he then presented the claim in his state habeas petition (doc. 1 at 7).

Respondent contends Petitioner failed to properly exhaust this claim (doc. 17 at 15–18). Respondent contends Petitioner raised it in his state habeas petition, but the state court rejected it on state procedural grounds, namely, that it was inappropriately raised in a habeas petition, and untimely and successive under Rule 3.850.

In Petitioner's reply, he contends he is entitled to review of this claim under <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012) (doc. 20 at 2).

The state court record demonstrates that Petitioner presented his ineffective assistance of counsel ("IAC") claim to the state courts in his state habeas petition (Ex. F at 4–6).[8]  The state circuit court determined that the proper vehicle for presenting the claim was a Rule 3.850 motion, not a habeas petition (*id.* at 37–38).  The court further found that Petitioner previously filed a Rule 3.850 motion, which was denied on the merits; therefore, any attempt to raise the claim in a Rule 3.850 motion would be procedurally barred as untimely and successive (*id.*).  The First DCA affirmed the decision (Ex. I).

As previously discussed, a procedural bar can occur when "the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred" in state court.  <u>Bailey</u>, 172 F.3d at 1302.  The state law ground must be "independent of the federal question and adequate to support the judgment."  <u>Jennings v. McDonough</u>, 490 F.3d 1230, 1247–48 (11th Cir. 2007).  To be "adequate," the state rule must be "firmly established and regularly followed."  <u>Payne v. Allen</u>, 539 F.3d 1297, 1313 (11th Cir. 2008) (quotation marks omitted).  If "the last state court rendering a judgment in the case clearly and expressly states" that its judgment denying the petitioner's federal claim rests on a state-law procedural bar, then the federal courts must respect the state court's decision, and the claim is barred from consideration on federal habeas review.  <u>Parker v. Sec'y for Dep't of Corr.</u>, 331 F.3d 764, 771 (11th Cir. 2003) (quotation marks and citations omitted).  When the last state court rendering

---

[8] Petitioner did not present Ground One in his Rule 3.850 motion.  The only claim he raised in his Rule 3.850 motion was an IAC claim based upon counsel's allowing him to enter a plea without moving the court for a competency evaluation (*see* Ex. A at 62–65).

judgment does not explain its reasoning, the federal court looks through to the last reasoned opinion by a state court on the claim to determine whether the claim is procedurally barred.  Ylst v. Nunnemaker, 501 U.S. 797, 803–05, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

Here, the state courts' ruling—that Petitioner's claim was not properly raised in a habeas petition, and untimely and successive under Rule 3.850—constitutes an independent and adequate state law ground for denial that procedurally bars the claims from federal habeas review.  The state court clearly and expressly stated it was relying on state procedural rules to resolve the federal claim.  Further, the state court's decision on the procedural issue rested entirely on state law grounds and was not intertwined with an interpretation of federal law.  Additionally, the rule that a Florida prisoner may not use a state habeas petition to collaterally attack his conviction, and instead must use Rule 3.850, is firmly established and consistently followed by the Florida courts.  *See* Baker v. State, 878 So. 2d 1236, 1245–46 (Fla. 2004); Fla. R. Crim. P. 3.850(m) (formerly Rule 3.850(l)) (providing that a habeas petition by a prisoner authorized to apply for relief pursuant to Rule 3.850 will not be entertained if he has failed to apply for relief to the sentencing court or that court has denied him relief, unless Rule 3.850 is inadequate or ineffective to test the legality of his detention). Also firmly established and regularly followed is the rule that successive Rule 3.850 motions are generally prohibited when the grounds alleged therein were known or could have been known at the time of the first Rule 3.850 motion.  *See* Baker, 878 So. 2d at 1243–44; Fla. R. Crim. P. 3.850(h) (formerly Rule 3.850(f)); Christopher v. State, 489 So. 2d 22, 24 (Fla. 1986); Frazier v. State, 898 So. 2d 1183, 1183–84 (Fla. 3d DCA 2005) (barring as successive claims that could have and should have been made in previous post-conviction motion); Washington v. State, 876 So. 2d 1233, 1234 (Fla. 5th DCA 2004) (same); *see also, e.g.*, Dubon v. Crews, No. 3:12cv283/MCR/EMT, 2014 WL 3519015, at *10 (N.D. Fla. July 16, 2014) (unpublished); Durkin v. Sec'y, Fla. Dep't of Corr., No. 5:11cv365/MMP/CJK, 2013 WL 678332, at *28 (N.D. Fla. Dec. 20, 2013) (unpublished) (rule prohibiting the filing of successive post-conviction motions is firmly established and regularly followed); Barge v. Crews, No. 3:11cv612/MW/CJK, 2013 WL 6085128, at *12 (N.D. Fla. Nov. 19, 2013) (unpublished) (Florida's rule prohibiting the filing of successive postconviction motions is firmly established and regularly followed, and is adequate to support the state court's judgment); Harris v. Sec'y, Dep't of Corr., No. 3:11cv471/RV/EMT, 2012 WL 5876649, at *7 (N.D. Fla. Nov.

5, 2012) (unpublished) (same).  Also, a Rule 3.850 generally must be filed within two years from when the judgment and sentence become final.  *See* Baker, 878 So. 2d at 1244; *see also* Fla. R. Crim. P. 3.850(b); *see also, e.g.,* Durkin, *supra* (Florida's rule prohibiting the filing of untimely post-conviction motions is firmly established and regularly followed).

Petitioner argues, as he did in his state habeas petition, that his failure to present his IAC claim in his Rule 3.850 motion was caused by the fact that he was not represented by counsel when he filed his Rule 3.850 motion (*see* Ex. F at 2–3; *see also* doc. 20 at 2).  Petitioner cites Martinez v. Ryan, — U.S. —, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), in support of his argument.

Prior to its 2012 decision in Martinez, the Supreme Court had long held that because there is no constitutional right to an attorney in state post-conviction proceedings, attorney error in such proceedings cannot constitute cause to excuse a federal habeas petitioner's procedural default of a claim.  *See* Coleman, 501 U.S. at 752–53.  Martinez recognized a limited, equitable qualification to Coleman where (1) "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding," (2) "the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial," or "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," and (3) "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  132 S. Ct. at 1318.

The Supreme Court's Strickland decision sets forth the standard for claims of ineffective assistance of counsel.  Under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly

deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.

In the instant case, Petitioner was appointed counsel in the Rule 3.850 proceeding. Therefore, to excuse the procedural default of his IAC claim, he must demonstrate that his post-conviction counsel was ineffective, under Strickland, for failing to raise it, and that his underlying IAC claim is substantial.   Here, Petitioner has not shown that his underlying IAC claim is

substantial.  Petitioner's trial counsel, Attorney Ritchie, testified at the post-conviction evidentiary hearing that he did not recall whether he actually showed Petitioner the FDLE report, but he discussed its contents with Petitioner (Ex. B at 154–55, 169–70).  He testified that the FDLE report stated that a DNA profile foreign to the victim's profile was collected from a swab from the "rape kit" assembled by the hospital where the victim was examined, and the DNA profile matched Petitioner's DNA profile (*see id.* at 155).

Petitioner also testified at the evidentiary hearing.  He testified that prior to entering his plea, he was aware that police had DNA evidence linking him to one sexual battery (*id.* at 164–66).  He stated he was aware of the DNA evidence because it was mentioned in the police report, which he had at the time (*id.* at 165–66).  The police report, which Petitioner submitted with his supporting memorandum in this case (*see* doc. 2, Ex. A), and which is also part of the state court record (Ex. A at 5–6), states in relevant part:

> On 7-29-08 I responded to Sacred Heart Hospital in reference to a sexual battery.  I contacted fifteen year old T[ ] C[ ], the victim, in the emergency room.  She was placed under oath and stated that she was on the phone with her friend Sheabriana Gadson in the family room when her forty seven year old grandfather, Darryl Jones, walked in and told her to touch his penis.  She refused and she stated that her grandfather grabbed her hand and tried to make her touch it.  She stood up and her grandfather pushed her down on the couch face down.  She then stated that her grandfather was able to pull down her pants and force her head into the couch.  Her grandfather then penetrated her anus.  T[ ] then stated that he was not able to penetrate deep so he removed his penis from her anus and put it into her vagina and began having sex with her.  She stated she told him to stop several times.  She stated that he ejaculated on her leg and used a towel to dry it off.  The towel was then put into the washing machine and washed.  She then ran out of the room and went to her uncle to report the rape.  He was outside cutting grass and did not witness anything.  A rape kit was conducted at the Emergency Room.
>
> I then went to Blue Jay Way to contact Darryl Jones.  He agreed to speak with me at the Sheriff's Office.  Prior to any questioning Mr. Jones was read his Miranda Warnings from the rights waiver form which he signed.  Mr. Jones denied having sex with T[ ].  Mr. Jones voluntarily submitted to DNA swabs being collected at his home.
>
> On 10-28-08 I received a DNA report from the Florida Department of Law Enforcement.  The report states that a DNA profile foreign to T[ ] C[ ] was collected

from her cervical swabs.  The foreign profile matches the DNA profile of Darryl
Lionel Jones.

Based on the above facts Darryl Lionel Jones should be charged with one
count of Sexual Assault by a Custodian.

(doc. 17, Ex. A at 5–6).

Petitioner failed to show that Attorney Ritchie's failure to allow him to read the FDLE's
DNA report deprived him of the ability to understand the nature of the sexual battery charges and
the factual basis for the charges.  Petitioner admits he was aware of the content of the FDLE report
per the police report, and he does not dispute Attorney Ritchie's testimony that Ritchie discussed
the DNA evidence with him (*see* doc. 1-1 at 3).

To the extent Petitioner claims that Attorney Ritchie failed to advise him that the evidence
supported only one charge of sexual battery because there was only one "episode," he has not shown
deficient performance by Ritchie.  Florida's sexual battery statute may be violated in multiple,
alternative ways, i.e., "oral, anal, or vaginal penetration by, or union with, the sexual organ of
another or the anal or vaginal penetration of another by any other object." Fla. Stat. § 794.011(1)(h)
(2002).  Sexual battery of a separate character and type requiring different elements of proof warrant
multiple punishments.  *See* State v. Meshell, 2 So. 3d 132, 134 (Fla. 2009) (sexual acts of a separate
character and type requiring different elements of proof, such as those proscribed in the sexual
battery statute, are distinct criminal acts that the Florida Legislature has decided warrant multiple
punishments); Saavedra v. State, 576 So. 2d 953, 956–57 (Fla. 1st DCA 1991); Grunzel v. State, 484
So. 2d 97 (Fla. 1st DCA 1986) (cunnilingus followed a few seconds later by vaginal intercourse
constituted distinct criminal acts); Begley v. State, 483 So. 2d 70 (Fla. 4th DCA 1986) (attempted
vaginal intercourse, attempted cunnilingus, and fellatio committed over two-week period constituted
distinct criminal acts); Duke v. State, 444 So.2d 492, 494 (Fla. 2d DCA) (vaginal penetration
followed a moment later by anal penetration constituted distinct criminal acts), *aff'd*, 456 So. 2d 893
(Fla. 1984); Bass v. State, 380 So. 2d 1181 (Fla. 5th DCA 1980) (oral sex followed by rape
constituted distinct criminal acts).

Although there was no DNA evidence of anal penetration, the victim stated that Petitioner
penetrated both her anus and her vagina with his penis.  Thus, there was evidence of two distinct

sexual acts.  Because there was evidence of two separate acts, defense counsel was not deficient for failing to advise Petitioner that the evidence supported only one sexual battery charge.

Petitioner failed to show that his underlying IAC claim had some merit; therefore, he failed to satisfy the <u>Martinez</u> standard for excusing his procedural default of Ground One.  Petitioner is thus not entitled to federal habeas review of Ground One.

B.    <u>Ground Two:  "Failure of counsel to adhere to Doctor Larson's notice to be 'aware' of decompensation in reference to psychological emergencies in the county jail.  Violation of 5th, 6th, and 14th Amendment of the U.S. Constitution.  Strickland v. Washington, 466 U.S. 668 (1984)."</u>

Petitioner alleges that in a psychological evaluation for insanity performed by Dr. Larson, Dr. Larson stated, "Obviously, he is at risk to decompensate.  Certainly, should you find him more impaired than I have described in this report, a reevaluation of his competency would be in order." (doc. 1-1 at 4; doc. 2, Ex. D; *see also* doc. 17, Ex. B at 196).  Petitioner alleges that between the date of Dr. Larson's evaluation and the date of sentencing (which occurred on the same day Petitioner entered his no contest plea), he experienced two "psychological emergencies" and was interviewed by the jail psychologist (doc. 1-1 at 4).  Petitioner alleges he advised defense counsel of this, but counsel failed to raise or revisit the issue of Petitioner's competency with the trial court (doc. 1-1 at 4; doc. 2 at 3).  Petitioner contends he was prejudiced by counsel's inaction, because the legal proceedings continued "with a defendant that [sic] may not have been cognizant of his alleged actions" (doc. 1-1 at 4).  Petitioner alleges he raised this claim in his Rule 3.850 motion and his state habeas petition (doc. 1 at 7).

Respondent asserts the same exhaustion defense asserted as to Ground One (doc. 17 at 21–22).  Respondent argues Petitioner did not raise this claim in his Rule 3.850 motion, and although he attempted to raise it in his state habeas petition, the state court denied it on state procedural grounds.  Therefore, the claim is procedurally barred from federal review.

As previously discussed, the substance of the sole claim raised by Petitioner in his Rule 3.850 motion was that Attorney Ritchie was ineffective for allowing him to enter a plea without moving the trial court for a competency evaluation (*see* Ex. A at 62–65).  The issue was fully and fairly explored at the evidentiary hearing, including the presentation of evidence regarding Dr. Larson's evaluation of Petitioner, Attorney Ritchie's knowledge of Dr. Larson's opinions and

recommendations, as well as Attorney Ritchie's interactions with and observations of Petitioner between the date of Dr. Larson's evaluation and the entry of the plea (*see* Ex. B at 157–59, 171). The transcript of the evidentiary hearing and the state court's written decision indicate that the court plainly understood the issue as whether counsel was ineffective for failing to have Petitioner evaluated for competency prior to entry of his plea, which included the time period between Dr. Larson's evaluation and the entry of the plea (*id.* at 157–58, 177).  The state court considered Petitioner's IAC claim on the merits, and included in its analysis a discussion of Dr. Larson's opinions and recommendations, and Attorney Ritchie's interactions with and observations of Petitioner between the date of Dr. Larson's evaluation and the entry of the plea (*id.* at 177).  The court completely rejected Petitioner's IAC claim on the merits.  Based upon this record, the undersigned concludes Petitioner exhausted Ground Two in the Rule 3.850 proceeding, and the state court adjudicated the merits of the claim.[9]

   1.  Clearly Established Federal Law

  A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. Lafler v. Cooper, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 132 S. Ct. at 1387.  The two-part test articulated in Strickland v. Washington, 466 U.S. 668 applies to claims that counsel was ineffective during the plea process.  Lafler, 132 S. Ct. at 1384 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); Frye, 132 S. Ct. at 1404, 1409–10 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); Hill v. Lockhart, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying Strickland's two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

---

  [9] That Petitioner subsequently raised the same claim in his state habeas petition, and the state court denied it on state procedural grounds, does not change this conclusion.

As previously discussed, <u>Strickland</u>'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" <u>Hill</u>, 474 U.S. at 57 (quoting <u>Strickland</u>, 466 U.S. at 688).  The focus of inquiry under the performance prong of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the circumstances." <u>Strickland</u>, 466 U.S. at 691. The Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the facts, as he understands them, would be viewed by a court . . . .  Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

<u>McMann</u>, 397 U.S. at 769–70.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." <u>Hill</u>, 474 U.S. at 56–57 (quoting <u>McMann</u>, 397 U.S. at 771).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  <u>Stano v. Dugger</u>, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." <u>Yordan v. Dugger</u>, 909 F.2d 474, 477 (11th Cir. 1990).  The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." <u>Wofford v. Wainwright</u>, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and

going to trial." *Id.*  This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.*  Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

Strickland's second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).   "Surmounting Strickland's high bar is never an easy task."  Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  Richter, 131 S. Ct. at 788. As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id.* (citations omitted).

2.      Federal Review of State Court Decision

The state court adjudicated Petitioner's claim as follows:

> In the instant motion, Defendant makes one allegation of ineffective assistance of trial counsel.  Specifically, he claims that counsel was deficient for failing to have Defendant undergo a psychological evaluation to determine Defendant's competency before he entered a plea.

At the evidentiary hearing, Defendant's trial counsel, Assistant Public Defender Scott Ritchie, testified that he retained Dr. James Larson to perform a psychological evaluation of Defendant. Dr. Larson reported that Defendant was competent to stand trial, and also that in his opinion, Defendant had not been insane at the time of the offense. Mr. Ritchie testified that due to the report, and further interactions with Defendant, he had "no concerns" about Defendant's competency at the time that Defendant entered a plea. Mr. Ritchie also testified that he saw no indications of any decompensation between the time that the evaluation was performed in July and the time that Defendant entered his plea in September.

The Court finds Mr. Ritchie to be credible. See Booker v. State, 969 So. 2d 186, 194 (Fla. 2007). Moreover, the fact that an evaluation was performed finding Defendant competent is irrefutable. Furthermore, there is no suggestion that Defendant lacked the ability to consult with his attorney or lacked an understanding of the proceeding against him. See Lawrence v. State, 969 So. 2d 294, 313–314 (Fla. 2007); see also Lamarca v. State, 931 So. 2d 838, 847–848 (Fla. 2006). Defendant is not entitled to relief.

(Ex. B at 176–77). The First DCA affirmed the decision without written opinion (Ex. E).

The Due Process Clause of the Fourteenth Amendment prohibits the State from trying or convicting a defendant who is mentally incompetent. See Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). The Supreme Court set the standard to be used in determining mental competency as whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed 2d 824 (1960) (per curiam); Drope v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); see also Indiana v. Edwards, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008). Florida courts follow this standard. See Hernandez-Alberto v. State, 126 So. 3d 193, 209 (Fla. 2013) (citing Dusky, 362 U.S. at 402 and Drope, 420 U.S. at 171).

In Drope, the Court elaborated as follows:

[t]he import of our decision in Pate v. Robinson is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and

subtle nuances are implicated.  That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

Drope, 420 U.S. at 180.

"[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial."  Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995) (citation omitted).  Further, a lifelong history of mental illness and emotional problems does not demonstrate incompetency without a specific showing of how these difficulties generated a substantial doubt as to the defendant's competency at the time in question.  See Medina, 59 F.3d at 1106; Card v. Singletary, 981 F.2d 481, 484 (11th Cir. 1992).  Similarly, the fact that the accused is undergoing treatment with psychiatric drugs, while relevant, does not alone prove incompetence.  See Sheley v. Singletary, 955 F.2d 1434, 1438–39 (11th Cir. 1992).  In order to establish incompetence, evidence must establish that the drugs affected the accused to the point that he could not effectively consult with his attorney and could not understand the proceedings.  See id. at 1439.

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."  Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); see also Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")).  Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843,74 L. Ed. 2d 646 (1983); see also Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998); Smith v. Kemp, 715 F.2d 1459, 1465 (11th  Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").  Questions of the credibility and demeanor of a witness are questions of fact.  See Consalvo, supra (citing Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999) (en banc)).  The

AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e).

Here, Petitioner has not presented clear and convincing evidence to rebut the state court's determination that Attorney Ritchie's testimony at the evidentiary hearing was credible. Therefore, this federal court defers to that credibility determination. Attorney Ritchie testified that during his first meeting with Petitioner, Petitioner informed him he was receiving mental health treatment (Ex. B at 148–50). Ritchie testified that based upon this information, he decided to ask Dr. Larson to conduct a confidential psychological evaluation (*id.* at 150). Ritchie testified that Dr. Larson conducted the evaluation on July 24, 2009 (*id.* at 150–51). He testified he reviewed Dr. Larson's written evaluation (*id.* at 151). Dr. Larson's evaluation, which is part of the state court record (*id.* at 192–97), indicated that Dr. Larson reviewed Petitioner's mental health treatment records from the county jail and a Veteran's Administration facility, and obtained other pertinent psychological and psychosocial history from Petitioner (*id.* at 192–94). Dr. Larson also conducted a mental status examination/psychological interview with Petitioner (*id.* at 194–95). Dr. Larson concluded that at the time of his evaluation, Petitioner (1) had the present ability to consult with his attorney with a reasonable degree of rational understanding, (2) had a rational, as well as factual, understanding of the proceedings against him, (3) had the capacity to appreciate the charges against him, (4) had the capacity to appreciate the range and nature of possible penalties, (5) had the capacity to understand the adversarial nature of the legal process, (6) had the capacity to disclose to his attorney pertinent facts surrounding the alleged offense, (7) had the capacity to manifest appropriate courtroom behavior, and (8) had the capacity to testify relevantly (*id.* at 195–96). Dr. Larson summarized his evaluation as follows:

> In the body of this report I offered you my opinion that the Defendant is competent to proceed. It appears both to me and the jail psychiatrist that he has shown improvements during this period of incarceration. However, both the psychiatrist and I agreed that he continues with some psychotic symptoms. Obviously, he is at risk to decompensate. Certainly, should you find him more impaired than I have described in this report, a reevaluation of his competency would be in order.

(Ex. B at 196).

During the post-conviction evidentiary hearing, Petitioner's post-conviction counsel asked Attorney Ritchie if he noticed any decompensation of Petitioner's mental state between the time of Dr. Larson's evaluation on July 24, 2009, and the date Petitioner entered his plea and was sentenced on September 2, 2009 (Ex. B at 158).   Ritchie answered no (*id.*).   Petitioner's counsel asked Attorney Ritchie whether he felt at the time of entering the plea that Petitioner needed to be reevaluated to ensure he was not decompensating (*id.* at 158–59).   Ritchie again answered no (*id.*). Attorney Ritchie testified that at the time of the plea, Petitioner appeared to understand what they were discussing, the options available to him, and that by entering a plea he was waiving his right to a trial (*id.* at 159, 171).

In light of Dr. Larson's determination that Petitioner was competent to proceed, and Attorney Ritchie's credible testimony that he was alert to the potential for decompensation at the time of the plea and sentencing but had no indication that Petitioner's mental state had decompensated, the state court reasonably determined that Petitioner failed to demonstrate that Attorney Ritchie was ineffective for allowing Petitioner to enter a plea without taking steps to have his competency re-evaluated.   Petitioner has not established that the state court's adjudication of his IAC claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>.   Therefore, he is not entitled to federal habeas relief on Ground Two.

     C.    <u>Ground Three:  "Ineffective assistance of counsel to inform Defendant of available defenses to the burglary/grand theft charge [sic].  Violation of 5th, 6th and 14 Amendments of the U.S. Constitution.  Strickland v. Washington, 466 US. 668 (1984)."</u>

Petitioner claims that defense counsel was ineffective for failing to advise him of a possible defense to the burglary and grand theft charges, namely, that the charges were subject to dismissal because the delay between the date of the events described in the probable cause affidavit, September 2007, and the date of his arrest, January 16, 2009, prejudiced his ability to prepare a defense (doc. 1-1 at 20; doc. 2 at 3–4).   Petitioner also contends counsel should have advised him that he could seek severance of the burglary and grand theft charges from the sexual battery charges because they arose from different acts and transactions (*id.*).   Additionally, Petitioner contends counsel was ineffective for failing to discuss with him the potential for suppressing his confession to law enforcement, on the ground that his interview constituted custodial interrogation, and he was

not advised of his Miranda rights prior to questioning (*id.*).  Petitioner alleges if counsel had advised him of these matters, he would have gone to trial on the burglary and grand theft charges (*id.*).  Petitioner alleges he raised this claim in his Rule 3.850 motion and his state habeas petition (doc. 1 at 9).

Respondent again asserts an exhaustion defense, specifically, that Petitioner did not raise this claim in his Rule 3.850 motion, and although he attempted to raise it in his state habeas petition, the state court denied it on state procedural grounds (doc. 17 at 24–26).  Therefore, the claim is procedurally barred from federal review (*id.*).

As with Ground One, the state court record demonstrates that Petitioner presented his IAC claim to the state courts in his state habeas petition (Ex. F at 7–8).  The state circuit court determined that the claim was improperly brought in habeas petition, and untimely and successive under Rule 3.850 (*id.* at 37–38).  As previously discussed, the procedural rules relied upon by the state court were firmly established in Florida law and regularly followed by Florida courts.  Therefore, Ground Three is procedurally barred from federal review unless Petitioner demonstrates cause and prejudice.

To excuse his procedural default under Martinez, Petitioner must demonstrate that his post-conviction counsel was ineffective under Strickland, and that his underlying IAC claim is substantial.  Here, Petitioner has not shown that his underlying IAC claim is substantial.  With regard to the Miranda issue, Petitioner alleges the detectives who interviewed him "should have known their actions were reasonably likely to elicit an incriminating statement," and thus should have given him a Miranda warning before questioning him (doc. 2 at 4).

To give force to the Constitution's protection against compelled self-incrimination, the Supreme Court established in Miranda "certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation."  Duckworth v. Eagan, 492 U.S. 195, 201, 109 S. Ct. 2875, 106 L. Ed. 2d 166 (1989).  Intent on "giv[ing] concrete constitutional guidelines for law enforcement agencies and courts to follow," 384 U.S. at 441–42, Miranda prescribed the following four now-familiar warnings:

> [A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3]

that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 479 at 1602.

Because these measures protect the individual against the coercive nature of custodial interrogation, they are required "'only where there has been such a restriction on a person's freedom as to render him "in custody."'" Stansbury v. California, 511 U.S. 318, 322, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994) (per curiam) (quoting Oregon v. Mathiason, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed .2d 714 (1977) (per curiam)).  As the Supreme Court repeatedly emphasized, whether a suspect is "in custody" is an objective inquiry.

> Two discrete inquiries are essential to the determination:  first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave.  Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry:  was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest."

Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L. Ed. 2d 383 (1995) (internal quotation marks, alteration, and footnote omitted); *see also* Yarborough v. Alvarado, 541 U.S. 652, 662–663, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004); Stansbury, 511 U.S. at 323; Berkemer v. McCarty, 468 U.S. 420, 442, and n.35, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984).  Rather than demarcate a limited set of relevant circumstances, the Court has required law enforcement officers and courts to "examine all of the circumstances surrounding the interrogation," Stansbury, 511 U.S. at 322, including any circumstance that "would have affected how a reasonable person" in the suspect's position "would perceive his or her freedom to leave." *Id.* at 325.  On the other hand, the "subjective views harbored by either the interrogating officers or the person being questioned" are irrelevant. *Id.* at 323.  The test, in other words, involves no consideration of the "actual mindset" of the particular suspect subjected to police questioning. *See* Alvarado, 541 U.S. at 667; *see also* California v. Beheler, 463 U.S. 1121, 1125, n. 3, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983) (per curiam).

The benefit of the objective custody analysis is that it is "designed to give clear guidance to the police." Alvarado, 541 U.S. at 668. *But see* Berkemer, 468 U.S. at 441 (recognizing the "occasiona[l] . . . difficulty" that police and courts nonetheless have in "deciding exactly when a

suspect has been taken into custody"). Police must make in-the-moment judgments as to when to administer Miranda warnings. By limiting analysis to the objective circumstances of the interrogation, and asking how a reasonable person in the suspect's position would understand his freedom to terminate questioning and leave, the objective test avoids burdening police with the task of anticipating the idiosyncrasies of every individual suspect and divining how those particular traits affect each person's subjective state of mind. *See* Berkemer, 468 U.S. at 430–31 (officers are not required to "make guesses" as to circumstances "unknowable" to them at the time); Alvarado, 541 U.S. at 668 (officers are under no duty "to consider . . . contingent psychological factors when deciding when suspects should be advised of their Miranda rights").

The probable cause affidavit of the arresting officer, James Gore, is part of the state court record (Ex. A at 8–10).  The sworn affidavit is reliable evidence of the content of Gore's testimony if a suppression hearing had been held on the Miranda issue.  In Officer Gore's affidavit, he states that an unidentified black male told the burglary victim, Robert Vail, that Petitioner was responsible for the burglary of Vail's residence and theft of an air conditioning ("A/C") unit and a tractor battery (*id.* at 8–9).  Gore states that based upon this information, he made contact with Petitioner at 1761 E. Leonard Street, and asked Petitioner if he would speak with him.  Gore states Petitioner agreed. Gore states he explained to Petitioner that he was investigating a burglary, and that Petitioner was a suspect.  Gore asked Petitioner if he had any property at his residence that did not belong there, and Petitioner responded no.  Officer Gore then asked Petitioner if he could look around Petitioner's backyard, and Petitioner stated, "I don't mind."  Gore states he did not see any of the property that Vail reported stolen, but as Gore was returning to his vehicle, he observed a small battery on the bed of a small pickup truck.  The victim had reported that one of the stolen items was a tractor battery. Gore's affidavit states he questioned Petitioner about the battery, and Petitioner stated he found it on a junk pile.  Gore states he examined the battery and observed that it was a Yuasa battery, which matched the description of the stolen battery.  Gore seized the battery.  Gore's affidavit states he then asked Petitioner if he would accompany him to the police station, and Petitioner agreed.  Gore states that at the police station, he explained to Petitioner that he was not under arrest, and he was free to leave at any time.  Gore states Petitioner stated he understood.  Gore states that while interviewing Petitioner, Petitioner admitted to breaking into the house and stealing the inside A/C

unit and the battery.  Gore states Petitioner also admitted that he used a dolly or push cart to load the A/C unit up onto his truck during the early morning of September 13, 2007.  Gore states Petitioner stated he took the A/C unit to a third party and sold it.  Gore states Petitioner admitted he had a very bad crack addiction and was on probation for burglary.  Gore states Petitioner stated he was high on crack at the time of the burglary, and he did not remember if he acted alone or with someone else.  Petitioner does not allege any facts suggesting his encounter with Gore was different than Gore's description in his affidavit.

Based upon Officer Gore's sworn statements in his affidavit, which Petitioner does not dispute and which is reliable evidence of what his testimony would have been at a suppression hearing, there was no valid basis for challenging admission of Petitioner's confession on <u>Miranda</u> grounds.  When Gore stopped at Petitioner's home to investigate the burglary, Petitioner voluntarily spoke with Gore and consented to Gore's searching the backyard.   Petitioner voluntarily accompanied Gore to the police station.  Petitioner was unambiguously told that he was not under arrest and was free to leave.  There is no indication Petitioner was physically restrained during the interview, or that Gore brandished a weapon when he first approached Petitioner at his home or later during the interview.  There is no indication Petitioner's movements were ever restricted.  After the interview was over, Petitioner left voluntarily and was not arrested until approximately sixteen (16) months later.  Defense counsel's failure to pursue suppression of Petitioner's confession, or advise Petitioner that suppression was a viable option, was not ineffective assistance.  *See* <u>Purvis v. Dugger</u>, 932, F.2d 1413, 1419 (11th Cir. 1991) (defendant who made incriminating statement to psychiatrist at police station after being brought to station by police was not "in custody" for <u>Miranda</u> purposes when he made statement; although defendant had history of psychiatric treatment for chronic schizophrenia and eight to ten-year-old mentality, he voluntarily went to police station, was never placed under arrest or restrained during initial interview with psychiatrist, did not request a lawyer during the interview or ask psychiatrist to terminate the interview, and did not ask to go home until he confessed to killing victim); <u>Tukes v. Dugger</u>, 911 F.2d 508, 515 (11th Cir. 1990) (defendant was not "in custody" for <u>Miranda</u> purposes where he consented to a search of his house, voluntarily accompanied police to the stationhouse, and voluntarily remained there); *see also, e.g.*, <u>United States v. Maldonado</u>, 562 F. App'x 859, 861–62 (11th Cir. 2014) (unpublished) (defendant, a mail carrier,

was not in custody, so as to require <u>Miranda</u> warnings, when she was interrogated by postal inspectors in supervisor's office at post office; although when a team of postal inspectors stopped defendant on her delivery route, they effectively blocked in her mail truck and appeared to indicate that returning with them to post office was mandatory; defendant was unambiguously told she was free to leave, was not in custody, and did not have to answer questions; she was in familiar surroundings of her workplace, was not physically restrained, and inspectors did not brandish their weapons; and, although a female inspector accompanied defendant to restroom and did not let her close the door, defendant's movements were never restricted and she was free to leave at any time).

Petitioner also failed to show a substantial claim of ineffective assistance with regard to defense counsel's failure to advise him that the delay between Officer Gore's investigating the burglary in September 2007 and the filing of charges in February 2009 provided a viable due process defense. The statute of limitations is the primary safeguard against the government bringing overly-stale criminal charges. *See* <u>United States v. Marion</u>, 404 U.S. 307, 322, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971). However, when a defendant shows actual, substantial prejudice, due process may require dismissal of an indictment, brought within the statutory period, if the government intentionally delayed prosecuting the case in order to gain a tactical advantage over the accused. *Id.* at 324. Although actual prejudice is a necessary element of a due process claim, it is not, standing alone, sufficient to support dismissal. *See* <u>United States v. Lovasco</u>, 431 U.S. 783, 790, 97 S. Ct. 2044; 52 L. Ed. 2d 752 (1977). "[T]he due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Id.*

Accordingly, in order to obtain dismissal based on pre-indictment delay, a defendant must show both deliberate delay to gain a tactical advantage and actual prejudice. *See* <u>Stoner v. Graddick</u>, 751 F.2d 1535, 1542–43 (11th Cir. 1985). Prejudice is not presumed based on a lengthy delay, but rather actual prejudice must be shown in each case. *Id.* at 1544. The prejudice must be such that it impairs the fairness of the defendant's trial. *See* <u>United States v. Solomon</u>, 686 F.2d 863, 871 (11th Cir. 1982). Moreover, the prejudice must "rise to constitutional proportions" in order to support dismissal. *See* <u>United States v. Benson</u>, 846 F.2d 1338, 1342 (11th Cir. 1988). The Eleventh Circuit has recognized that the standard is an exceedingly high one. *See* <u>Tiemens v. United States</u>, 724 F.2d 928, 929 (11th Cir. 1984).

Here, Petitioner was charged with a second degree felony (burglary of an unoccupied dwelling) and a third degree felony (grand theft).  *See* Fla. Stat. §§ 810.02(1)(b) and (3)(b), 812.014(1)(a) and (b), 812.014(2)(c)1.  In Florida, a prosecution for felonies other than life felonies or first degree felonies must be commenced within three years after commission of the crime.  *See* Fla. Stat. § 775.15(2)(b).  Only seventeen (17) months elapsed from the date of the burglary and grand theft, and the filing of the information charging Petitioner with those offenses.  Therefore, there was no statute of limitations defense to the charges.

Additionally, Petitioner failed to show a viable due process defense.  Petitioner alleges the seventeen-month delay prejudiced the defense because "[t]he relevant issues and facts would have been forgotten also [sic] specific references by the witnesses and the inability to find witnesses that would be needed in defense" (doc. 1-1 at 20).  He further alleges, "[t]he material witness in this case had since died and the evidence against the defendant was hearsay.  Not only could there not have been any possible identification but also no confrontation afforded the Petitioner." (*id.*).  However, Petitioner does not argue, nor do his factual allegations suggest, that the State intentionally delayed prosecuting the burglary case in order to gain a tactical advantage over him.   Therefore, he failed to show the existence of a viable due process defense to the burglary case based upon the pre-indictment delay.  *See, e.g.*, Jackson v. Benton, 315 F. App'x 788, 792 (11th Cir. 2009) (unpublished) (defendant's due process claim based upon pre-indictment delay failed, because he relied on his claim of prejudice, and did not argue that the pre-indictment delay was designed to obtain a tactical advantage).  Defense counsel was therefore not ineffective for failing to advise Petitioner that a viable statute of limitations or due process defense to the burglary and grand theft case existed.

Finally, Petitioner failed to show a substantial claim of ineffective assistance with regard to defense counsel's failure to advise him that the sexual battery charges could be severed from the burglary and grand theft charges.  Rule 3.152 of the Florida Rules of Criminal Procedure provides for severance of offenses charged in a single indictment or information.  Here, the sexual battery charges were charged in an information separate from the information charging the burglary and grand theft charges (*see* Ex. A at 1, 3).  Therefore, severance was not an issue.

Petitioner failed to show cause to overcome his procedural default of Ground Three. Therefore, he is not entitled to federal review of Ground Three.

> D.    Ground Four:  "Ineffective assistance of counsel (failure to investigate) for failure to obtain a separate evaluation for the burglary/grand theft charge [sic] or at least specified areas of testing.   Violation of 5th, 6th and 14 Amendments of the U.S. Constitution. Wiggins v. Smith, 123 S. Ct. 2527 (2003)."

Petitioner concedes defense counsel obtained a psychological evaluation for sanity and competency as to the sexual battery charges, but he contends counsel was ineffective for failing to obtain a separate psychological evaluation for sanity and competency as to the burglary and grand theft charges (doc. 1-1 at 21; doc. 2 at 4–5).

Respondent again asserts an exhaustion defense, specifically, that Petitioner did not raise this claim in his Rule 3.850 motion, and although he attempted to raise it in his state habeas petition, the state court denied it on state procedural grounds (doc. 17 at 28–29).   Therefore, the claim is procedurally barred from federal review (*id.*).

As with Grounds One and Three, the state court record demonstrates that Petitioner presented his IAC claim to the state courts in his state habeas petition (Ex. F at 8).  The state circuit court determined that the claim was improperly brought in habeas petition, and untimely and successive under Rule 3.850 (*id.* at 37–38).  As discussed *supra*, the procedural rules relied upon by the state court were firmly established in Florida law and regularly followed by Florida courts.  Therefore, Ground Four is procedurally barred from federal review unless Petitioner demonstrates cause and prejudice.

Petitioner failed to show a substantial underlying IAC claim to excuse his procedural default under Martinez.  With regard to competency, the record is clear that defense counsel obtained a competency evaluation from Dr. Larson, and Larson concluded that Petitioner was competent to proceed.  Petitioner's competency to proceed was not offense-specific.  Therefore, defense counsel was not ineffective for failing to obtain a separate competency evaluation for the burglary charge.

With regard to Petitioner's sanity, defense counsel obtained a sanity evaluation from Dr. Larson with respect to the sexual batteries, which occurred on July 29, 2008 (*see* Ex. B at 191).  Dr. Larson concluded:

> The Defendant disclaims that he was under the influence of auditory command hallucinations or delusions during the time frame of the alleged incidents.  He is

quite guarded in describing his conduct during that time frame.  Frankly, I question the veracity of his report.  On the sexual battery charge, he stated he could recall "everything up to the point of having physical contact with a girl."  This pattern of amnesia is improbable.  Be that as it may, since the Defendant does not relate his alleged criminal conduct to hallucinations or delusions, I concluded that he had the capacity to understand what he was doing, the consequences, as well as the wrongfulness of his alleged criminal conduct.  As a consequence, he does not meet the criteria for insanity.

(Ex. B at 191).

Under Florida law insanity is established when:

(a) The defendant had a mental infirmity, disease, or defect; and

(b) Because of this condition, the defendant:

1.  Did not know what he or she was doing or its consequences; or

2.  Although the defendant knew what he or she was doing and its consequences, the defendant did not know that what he or she was doing was wrong.

Fla. Stat. § 775.027(1).

Here, even if Petitioner had a mental infirmity, disease, or defect when he committed the burglary and grand theft in September 2007, he has not alleged any facts suggesting that because of his mental disease, he did not know what he was doing at the time of the burglary, or the consequences of his conduct, or that he did not know that what he was doing was wrong.  Further, Petitioner's statements to Officer Gore suggest that at the time of the burglary, Petitioner knew what he was doing and the consequences of his conduct, and he knew that his conduct was wrong.  Petitioner thus failed to show a substantial claim of IAC with regard to defense counsel's failure to obtain a sanity evaluation as to the burglary and grand theft charges.[10]

Petitioner procedurally defaulted Ground Four, and he failed to show cause and prejudice to overcome the default.  Therefore, Ground Four is procedurally barred from federal review.

E.    Ground Five:  "Ineffective assistance of counsel for failure to object to incomplete plea colloquy.  Violation of due process rights of U.S. Constitution and competent counsel clause of U.S. Constitution.  Strickland v. Washington, 466 US. 668 (1984)."

---

[10] Petitioner's intoxication on crack cocaine at the time of the burglary would not have supported a defense to the charges.  *See* Fla. Stat. § 775.051 (eff. Oct. 1, 1999).

Case No.:  3:13cv630/LAC/EMT

Petitioner contends the trial court's plea colloquy failed to comply with Rule 3.172 of the Florida Rules of Criminal Procedure, and defense counsel was ineffective for failing to object to the colloquy as inadequate (doc. 1-1 at 22; doc. 2 at 5).  Petitioner alleges the trial court failed to inquire as to whether anyone had threatened or forced him to enter a plea, whether any promises had been made to him other than those announced in connection with the plea, and whether Petitioner suffered from any mental deficiency or was under the influence of medication that might affect his judgment (doc. 1-1 at 22).  Petitioner states he was under the influence of psychotropic medication at the time he entered the plea (*id.*).  He contends if defense counsel had ensured that the trial court conducted an adequate colloquy, the court would have been required to order a re-evaluation of his competency (*id.*).

Respondent again asserts an exhaustion defense, specifically, that Petitioner did not raise this claim in his Rule 3.850 motion, and although he attempted to raise it in his state habeas petition, the state court denied it on state procedural grounds (doc. 17 at 31–32).  Therefore, the claim is procedurally barred from federal review (*id.*).

The state court record demonstrates that Petitioner presented his IAC claim to the state courts in his state habeas petition (Ex. F at 9).  The state circuit court determined that the claim was improperly brought in habeas petition, and untimely and successive under Rule 3.850 (*id.* at 37–38).  As discussed *supra*, the procedural rules relied upon by the state court were firmly established in Florida law and regularly followed by Florida courts.  Therefore, Ground Five is procedurally barred from federal review unless Petitioner demonstrates cause and prejudice.

Petitioner failed to show a substantial underlying IAC claim to excuse his procedural default under <u>Martinez</u>.  At the time Petitioner entered his plea, on September 2, 2009, Rule 3.172 required the trial court to determine that the defendant understands:

> (1) the nature of the charge to which the plea is offered, the maximum possible penalty, and any mandatory minimum penalty provided by law;
>
> (2) if not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, an attorney will be appointed to represent him or her;
>
> (3) the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury, and at that trial a defendant has the right to the

assistance of counsel, the right to compel attendance of witnesses on his or her behalf, the right to confront and cross-examine witnesses against him or her, and the right not to testify or be compelled to incriminate himself or herself;

(4) that upon a plea of guilty, or nolo contendere without express reservation of the right to appeal, he or she gives up the right to appeal all matters relating to the judgment, including the issue of guilt or innocence, but does not impair the right to review by appropriate collateral attack;

(5) that if the defendant pleads guilty or is adjudged guilty after a plea of nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he or she waives the right to a trial;

(6) that if the defendant pleads guilty or nolo contendere, the trial judge may ask the defendant questions about the offense to which he or she has pleaded, and if the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against him or her in a prosecution for perjury;

(7) the complete terms of any plea agreement, including specifically all obligations the defendant will incur as a result;

(8) that if he or she pleads guilty or nolo contendere, if he or she is not a United States citizen, the plea may subject him or her to deportation pursuant to the laws and regulations governing the United States Immigration and Naturalization Service. It shall not be necessary for the trial judge to inquire as to whether the defendant is a United States citizen, as this admonition shall be given to all defendants in all cases; and

(9) that if the defendant pleads guilty or nolo contendere, and the offense to which the defendant is pleading is a sexually violent offense or a sexually motivated offense, or if the defendant has been previously convicted of such an offense, the plea may subject the defendant to involuntary civil commitment as a sexually violent predator upon completion of his or her sentence. It shall not be necessary for the trial judge to determine whether the present or prior offenses were sexually motivated, as this admonition shall be given to all defendants in all cases.

*See* Fla. R. Crim. P. 3.172(c). The trial court's colloquy with Petitioner, a transcript of which is part of the state court record, substantially complied with the requirements of Rule 3.172 (*see* Ex. J).

Further, contrary to Petitioner's assertions, Rule 3.172 does not require the trial court to inquire regarding whether anyone had threatened or forced the defendant to enter a plea, whether any promises had been made to the defendant other than those announced in connection with the

plea, or whether the defendant was suffering from any mental deficiency or was under the influence of medication that might affect his judgment.  *See* Fla. R. Crim. P. 3.172.  Moreover, during the trial court's colloquy, Petitioner stated under oath that he understood the charges against him and the penalties those charges carried; he understood what his sentence would be if he entered pleas to the charges; and he understood he had certain rights (including the right to go to trial, to have a jury decide whether he was guilty, to call witnesses on his behalf, to cross-examine witnesses, and to appeal any finding and sentence resulting from the trial), which rights he would give up by entering a plea (Ex. J).  Petitioner affirmatively stated he wished to give up those rights; that it was his own free decision to enter pleas to the charges; that he was satisfied with the advice and assistance of Attorney Ritchie; and that counsel had not forced or coerced him to enter a plea (*id.*).  He affirmatively stated he did not have any questions at all concerning the pleas, and he was entering pleas because he wanted to do so (*id.*).  The trial court asked Petitioner if counsel had told him to answer any of the court's questions untruthfully in order to obtain acceptance of the pleas, and Petitioner responded no (*id.*).  Petitioner affirmed that everything he had said to the court was true and correct (*id.*).  Although the court did not inquire as to whether anyone, besides counsel, had threatened or forced Petitioner to enter a plea, or whether any promises had been made to Petitioner other than those announced in connection with the plea, Petitioner does not allege he would have answered yes to either of those questions.

Finally, even if the court had inquired as to whether Petitioner suffered from any mental deficiency or was under the influence of medication that might affect his judgment, Petitioner's affirmative answer to those questions would not have automatically resulted in a competency re-evaluation.  As previously discussed, the fact that the accused is undergoing treatment with psychiatric drugs, while relevant, does not alone prove incompetence.  *See* Sheley, 955 F.2d at 1438–39.  Petitioner does not allege he was experiencing any type of mental health emergency on the day he entered his plea, or that his mental condition and/or medication affected the knowing and voluntary nature of his plea. Therefore, he failed to show that counsel's failure to ensure that the trial court inquired into these matters had any effect on the court's acceptance of the plea.

Petitioner failed to show that his underlying IAC claim had some merit.  Therefore, he failed to satisfy the <u>Martinez</u> standard for excusing his procedural default of Ground Five.  Accordingly, Ground Five is procedurally barred from federal review.

F.      <u>Ground Six:  "Ineffective assistance of trial counsel to adequately investigate exculpatory aspects of the case.  Violation of 5th, 6th and 14 Amendments of the U.S. Constitution.  Strickland v. Washington, 466 US. 668 (1984)."</u>

Petitioner contends that according to the police report, the sexual batteries occurred while the victim was talking to Sheabriana Gadson on the telephone (*see* doc. 1-1 at 23).  He alleges counsel was aware of this, but failed to contact Ms. Gadson (*id.*).  Petitioner alleges if counsel had investigated Ms. Gadson, counsel would have discovered exonerating evidence that "there was no defensive postures taken, no screams of help or adverse reactions to something otherwise occuring [sic] while the victim was on the phone" (*id.*).

Respondent again asserts an exhaustion defense, specifically, that Petitioner did not raise this claim in his Rule 3.850 motion, and although he attempted to raise it in his state habeas petition, the state court denied it on state procedural grounds (doc. 17 at 34–36).  Therefore, the claim is procedurally barred from federal review (*id.*).

The state court record demonstrates that Petitioner presented his IAC claim to the state courts in his state habeas petition (Ex. F at 9–10).  The state circuit court determined that the claim was improperly brought in habeas petition, and untimely and successive under Rule 3.850 (*id.* at 37–38).  As discussed *supra*, the procedural rules relied upon by the state court were firmly established in Florida law and regularly followed by Florida courts.  Therefore, Ground Six is procedurally barred from federal review unless Petitioner demonstrates cause and prejudice.

Petitioner failed to show a substantial underlying IAC claim to excuse his procedural default under <u>Martinez</u>.  Although the police report indicates that the victim was on the telephone with Ms. Gadson when Petitioner walked into the room and told her to touch his penis, there is no indication that the victim remained on the telephone throughout the sexual batteries.  Furthermore, Petitioner's allegations of what Ms. Gadson would have testified to are entirely speculative.  Moreover, testimony regarding whether the victim screamed or attempted to defend herself would not have exonerated Petitioner, especially in light of the evidence that Petitioner's DNA was found in the victim's vagina.  Petitioner failed to show that his underlying IAC claim regarding counsel's failure

to investigate Ms. Gadson as a witness had some merit.  Therefore, he failed to satisfy the <u>Martinez</u> standard for excusing his procedural default of Ground Six.  Accordingly, Ground Six is procedurally barred from federal review.

> G.    Ground Seven:  "Chapman Error."

Petitioner contends the cumulative effect of counsel's errors presented in Grounds One through Four deprived him of his 5th, 6th, and 14th Amendment rights to due process and effective assistance of counsel (doc. 1-1 at 9; doc. 2 at 5).  Respondent contends this issue is not cognizable in federal habeas (doc. 17 at 38–39).

None of Petitioner's individual claims show that he received ineffective assistance of counsel in the state criminal proceedings.  Therefore, Petitioner cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness or effective assistance of counsel.  *See* <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1132 (11th Cir. 2012) (assuming, without deciding, that a claim of cumulative error in the context of ineffective assistance of counsel would be cognizable in the habeas context, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit).  Accordingly, Petitioner is not entitled to federal habeas relief on Ground Seven.

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is

an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 15<u>th</u> day of September 2014.


<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**